SAIPAN HOTEL CORP., d.b.a. Hafadai Beach Hotel, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

Hotel Employees & Restaurant Employees Local 5, Respondent–Intervenor.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

SAIPAN HOTEL CORP., d.b.a. Hafadai Beach Hotel, Respondent.

Nos. 96–70076, 96–70198.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1997.

Decided June 12, 1997.

was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

11 U.S.C. § 548(a)(1).

Anna M. Elento–Sneed, Carlsmith, Ball, Wichman, Case & Ichiki, Honolulu, HI, for petitioner-cross-respondent.

David A. Fleischer, National Labor Relations Board, Washington, DC, for respondent-cross-petitioner.

Nancy Gottfried and Robert B. Dunlap, Office of the Attorney General, Commonwealth of the Northern Mariana Islands, Saipan, MP, for amicus Commonwealth of the Northern Mariana Islands.

David A. Wiseman, Law Offices of David A. Wiseman, Saipan, MP, for amicus Hotel Association of the Northern Mariana Islands.

Joseph L. Manson, III, Verner, Liipfert, Bernhard, McPherson and Hand, Washington, DC, for amicus Saipan Portopia Hotel Corporation.

Patrick H. Jones, Marr, Jones & Pepper, Honolulu, HI, for amicus Pacific Management Resource Group.

Before: NORRIS, HALL and TASHIMA, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Saipan Hotel Corporation petitions for review of an NLRB order directing it to bargain with the Hotel Employees & Restaurant Employees, Local 5, AFL–CIO (the "Union"). The NLRB cross-petitions for enforcement of its order.

I

Saipan Hotel operates in the Commonwealth of the Northern Mariana Islands ("CNMI"), which is a self-governing commonwealth in political union by covenant with the United States. The hotel employs non-

immigrant alien contract workers, classified as "nonresident" workers, as well as "resident" workers, who include U.S. citizens, persons born in the CNMI, and citizens of the former United Nations Trust Territories of the Pacific Islands.

In this action, Saipan Hotel's principal argument is that the NLRB lacks jurisdiction over nonresident workers in the CNMI. Although we decided in *Micronesian Telecommunications Corporation v. NLRB*, 820 F.2d 1097, 1100 (9th Cir.1987), that the National Labor Relations Act ("NLRA") applies to the CNMI, we did not address the distinction between CNMI's resident and nonresident workers. *See id.* at 1099 (stating issue as whether NLRB had jurisdiction over "employees," without distinguishing between classes of employees). Saipan Hotel reasons that if the NLRA applies to nonresident workers as well as to resident workers, NLRB decisions that affect the terms and conditions of nonresident workers' employment would conflict with the CNMI's sovereign control over its immigration matters, as provided in Section 503(a) of the Covenant between the CNMI and the United States.[1] Covenant to Establish a Commonwealth of the Northern Mariana Islands, 48 U.S.C. § 1801 note. In particular, Saipan Hotel complains that the absence of a provision in the NLRA for distinguishing between classes of covered employees irreconcilably conflicts with a provision in the CNMI's Nonresident Workers Act ("NWA"), 3 N. Mar. I.Code § 4413,[2] which explicitly gives preferential treatment to resident workers.

■ In asserting that it has jurisdiction, the NLRB relies primarily on the *Microne-*

*sian Telecommunications* blanket holding that "the 1976 Covenant makes the NLRA applicable to the Marianas," without excepting any CNMI workers. 820 F.2d at 1100. Because Saipan Hotel concedes both that the issues on appeal involve labor disputes and that it is an employer within the meaning of the NLRA, the NLRB articulates the sole jurisdictional question as whether both resident and nonresident CNMI workers qualify as "employees" as defined by the NLRA. Section 2(3) of the NLRA provides that "[t]he term 'employee' shall include any employee," with six categorical exceptions that indisputably do not apply here. 29 U.S.C. § 152(3). All employees who do not fall within those categorical exceptions, even employees who are illegal aliens, are covered by the NLRA. *Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 891–92, 104 S.Ct. 2803, 2808–09, 81 L.Ed.2d 732 (1984). As a result, the NLRB argues that it must have jurisdiction over both resident and nonresident CNMI workers. *See NLRB v. Deaton, Inc.*, 502 F.2d 1221, 1229 (5th Cir.1974) (individuals who meet statutory definition of "employee" "must be regarded as employees for all purposes").

■ The NLRB's "construction of terms in the National Labor Relations Act (NLRA) that establish its statutory jurisdiction must be upheld if that construction is 'reasonably defensible.'" *Micronesian Telecom.*, 820 F.2d at 1099–1100 (citation omitted). There is no defensible construction of "employee" other than that the term applies to both categories of workers at issue here. Given that the NLRA applies to the CNMI, *id.* at 1100, and the NLRA does not except nonresident (or alien) employees from its reach,

---

1. Section 503(a) provides in pertinent part:
    The following laws of the United States ... will not apply to the Northern Mariana Islands except in the manner and to the extent made applicable to them by the Congress by law after termination of the Trusteeship Agreement:
       (a) except as otherwise provided in Section 506, the immigration and naturalization laws of the United States

    Covenant to Establish a Commonwealth of the Northern Mariana Islands, 48 U.S.C. § 1801 note (§ 503(a)).
    It is undisputed that the Section 506 exceptions are inapplicable here.

2. Section 4413 provides:

    Resident workers shall be given preference in employment in the Commonwealth. Nonresident workers shall be employed only as necessary to supplement the available labor force. No employer shall hire, employ, or otherwise engage for compensation any nonresident worker to perform services or labor in the Commonwealth except in strict accordance with the provisions of this Chapter and any rule or regulation issued under this Chapter.
    3  N. Mar. I.Code § 4413.

*Sure–Tan,* 467 U.S. at 892, 104 S.Ct. at 2808–09, the NLRB necessarily possesses jurisdiction over both resident and nonresident workers. Indeed, the Covenant between the CNMI and the U.S. provides that federal statutes apply to the CNMI "as they are applicable to the several states." Cov. § 502(a)(2). Because the NLRA, as it is applied in the United States, does not distinguish between citizen and alien employees, neither can the NLRA be applied in the CNMI to distinguish between resident and nonresident workers.

Moreover, application of the NLRA to the CNMI's nonresident workers does not contravene the statutory preference for resident workers expressed in the NWA because there is no necessary conflict between the NWA and the NLRA. The NWA's twin purposes—to protect residents' job security by giving them preferences in employment and to ensure that nonresidents' employment will not disadvantage residents' wages and working conditions—are essentially the same as the purposes of the United States' immigration laws. *See Sure–Tan,* 467 U.S. at 893, 104 S.Ct. at 2809 ("A primary purpose in restricting immigration is to preserve jobs for American workers; immigrant aliens are therefore admitted to work in this country only if they 'will not adversely affect the wages and working conditions of the workers in the United States similarly employed.' ") (quoting 8 U.S.C. § 1182(a)(14)). And as the Court recognized in *Sure–Tan, id.,* bringing alien workers within the ambit of the NLRA ensures that citizen workers' economic interests will be better protected:

> Application of the NLRA helps to assure that the wages and employment conditions of lawful residents are not adversely affected by the competition of illegal alien employees who are not subject to the standard terms of employment. If an employer realizes that there will be no advantage under the NLRA in preferring illegal aliens to legal resident workers, any incentive to hire such illegal aliens is correspondingly lessened.

Obviously, the concerns are slightly different between legal nonresident and resident workers in the CNMI as compared to illegal aliens, on the one hand, and legally resident aliens and citizen workers, on the other, in the U.S., but the concern for creating disincentives to hire aliens who are not legally admitted is constant in both situations. The NLRB's exercise of jurisdiction in these cases helps to safeguard, rather than to subvert, that concern.

Because the NLRB's construction of the term "employee" is the only defensible construction of the term, and because application of the NLRA to nonresident workers in the CNMI does not necessarily create a conflict with the NWA, we hold that the NLRA applies both to resident and to nonresident workers in the CNMI.

## II

■ Saipan Hotel next argues that, even if the NLRA covers both resident and nonresident workers in the CNMI, the NLRB abused its discretion by asserting jurisdiction in this case because the CNMI government so significantly controlled the terms of employment for Saipan Hotel's employees that Saipan Hotel could not meaningfully bargain with its employees independent of the government's direction. Saipan Hotel points to Section 2(2) of the NLRA, 29 U.S.C. § 152(2), which excepts employers that are governmental entities, or political subdivisions, from the NLRA's reach, and notes that, for years, the NLRB has exercised its discretion to similarly except employers whose employment conditions are extensively regulated by these statutorily exempt governmental entities, on the reasoning that these employers cannot effectively bargain with their employees because of that governmental regulation. *See Res–Care, Inc.,* 280 N.L.R.B. 670, 672, 1986 WL 53982 (1986) (stating that NLRB typically declined to exercise jurisdiction over employers whose employment conditions were significantly regulated by government entities). Saipan Hotel argues that the *Res–Care* rule should have controlled this dispute as well. And Saipan Hotel complains that the NLRB retroactively applied to these disputes its new rule, articulated in *Management Training Corp.,* 317 N.L.R.B. 1355, 1358, 1995 WL 451936 (1995), that it may exercise jurisdiction even where

political subdivisions exert significant control over the terms of workers' employment.

Although the NLRB contends that the broader rule in *Management Training* does apply in this case, it also claims it had jurisdiction even under the narrower *Res–Care* rule. Saipan Hotel could not have relied on the *Res–Care* rule when contracting with its employees because Saipan Hotel is not the kind of employer to which the NLRB has ever applied the *Res–Care* rule to decline jurisdiction. *Compare ARA Serv., Inc. v. NLRB*, 71 F.3d 129, 135–36 (4th Cir.1995) (denying enforcement of NLRB order retroactively applying *Management Care* rule because employer had relied on *Res–Care* rule when crafting employment agreement). Saipan Hotel did not have contracts with the CNMI government, and Saipan Hotel did not receive substantial funding from the CNMI government. Instead, the NLRB points out that Saipan Hotel "is a private hotel whose 'close ties' with the CNMI government consist solely of being subject to the same government regulations as every CNMI employer." Appellee's Brief at 26. The NLRB declares that it only applied the *Res–Care* rule to employers that did in fact have close ties to government or that received significant funding from government.

■ In general, we defer to the NLRB regarding retroactive application of its decisions "absent manifest injustice." *NLRB v. Best Prod. Co.*, 765 F.2d 903, 913 (9th Cir. 1985). Saipan Hotel, which could not have relied on *Res–Care* in the first place, did not suffer manifest injustice from the application of *Management Training* to this dispute. Although the CNMI does retain significant power to control the terms and conditions of nonresident employees' employment—nonresident employees must receive yearly authorization to work in the CNMI from the CNMI government, for example, and the CNMI government requires that the nonresident employees not be paid more than resident employees—the NLRB points out that the CNMI actually performs only a perfunctory review. Indeed, Saipan Hotel's director of public relations agreed that CNMI's renewal of nonresident workers' employment contracts was "fairly routine" unless resident workers applied for the same job. Trans. of Representation Hrg., CR at 307. Given the minimal degree to which the CNMI actually controls the private employer-employee relationship here, and the fact that that minimal degree of control applies to every private employer in the CNMI that employs any nonresident workers, it does not work a "manifest injustice" for the NLRB to assert jurisdiction over these employment relationships.

## III

■ Finally, Saipan Hotel argues that the NLRB should have divided the resident and nonresident workers into separate bargaining units in recognition of the preferential treatment the NWA accords to resident workers. The NLRB responds that the nonresident and resident workers at Saipan Hotel have communal interests because they perform the same work under the same supervisors, are employed under the same job classifications, and receive the same or similar wage rates.

■ The NLRB's decision regarding bargaining units is "if not final, . . . rarely to be disturbed." *NLRB v. French Int'l Corp.*, 999 F.2d 1409, 1409 (9th Cir.1993) (quoting *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947)). The NLRB need only choose an appropriate bargaining unit, even if it does not choose the most appropriate such unit. *Id.* Here, the shared common interests of the nonresident and resident workers fully justify the NLRB's determination that they should constitute a single bargaining unit.

Saipan Hotel's petition for review is DENIED and the NLRB's petition for enforcement is GRANTED.